UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| John Daniel Kemmerlin, #337451, | ) | C/A No. 4:10-204-HFF-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Clara Heartline; The South Carolina Highway Patrol; | ) | |
| The Dorchester County Sheriff Department, | ) | |
| | ) | |
| Defendants. | ) | |

# I. PROCEDURAL BACKGROUND

The plaintiff, John Daniel Kemmerlin, filed this action under 42 U.S.C. § 1983[1] on February 1, 2010, alleging violations of his constitutional rights. Defendants South Carolina Highway Patrol and Dorchester County Sheriff's Department filed a motion to dismiss or, in the alternative, a motion for summary judgment on March 18, 2010. (Doc. #14). Because plaintiff is proceeding pro se, he was advised on or about March 19, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion to dismiss/summary judgment could result in dismissal of his complaint. The plaintiff filed a response on May 7, 2010. (Doc. #26).

All defendants filed a motion for summary judgment on July 6, 2010. (Doc. #31). Because plaintiff is proceeding pro se, he was advised on or about July 7, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion for

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

summary judgment could result in dismissal of his complaint. The plaintiff filed a response on August 10, 2010. (Doc. #34). Plaintiff filed a motion for summary judgment on September 3, 2010, to which defendants filed a response on September 20, 2010.

## II. DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

In the complaint, plaintiff alleges as follows, quoted verbatim:

On the morning of April 6, 2009, I was stoped [sic] by Highway Patrol Office Clara Heartline[2] and arrest for DUI. At the sceen[sic] the officer searched me and found a bottle of pills I had in my pants pocket and I told her they were my fluid pills and I had just taken one. While transporting me to the Sheriff's Office annex building in Summerville, S.C. I told the officer I had to use the restroom and when we arrived she let me go. Now a short time later I had to use the restroom again but the officer refused to le me go saying that I had just went. I tried to explain to officer Heartline that I had took a fluid pill and this is what fluid pills do, they make you go to the bathroom a lot or very often but officer Heartline refuse to let me use the restroom. After over 10 mins. of begging officer Heartline to use the restroom and the officer refusing to allow me to use it I stood up and told her I really had to go but she put her hand on my shoulder and pushed me back on to my chair. As all this was going on a Dorchester County sheriff officer who name I do not know and who was listening to the whole interaction came up behind me and had his taze[r] gun pointed at my head and was going to taze me instead of talking to the officer about allowing me to use the restroom. Now I continued to beg the officer to use the restroom but she kept refusing resulting in her forcing me to urinate on myself. Why officer Heartline degraded and humiliated me in this manner I don't know. What also bothers me is that the Dorchester County Sheriff officers who were there did nothing to stop this demoralizing conduct of officer Heartline which is why I believe the Dorchester County Sheriff Department should be included in my complaint and or lawsuits. The name of the Dorchester County Sheriff officers I do not know, but the one who pointed his tazer gun at me is on video.

My grievance is not against this institution.. . .

(Complaint).

---

[2] Plaintiff refers to defendant Clara Hartline as Heartline.

Plaintiff requests that he "be compensated and the officers relived[sic] of duty. I am asking compensation in the amount of 3.5 million dollars." (Complaint).

Defendants South Carolina Highway Patrol and the Dorchester County Sheriff's Department argue they are entitled to summary judgment because they are not "persons" amenable to suit in §1983 actions, the Eleventh Amendment prohibits a federal court from entertaining an action where a defendant is a state or a state agency, and if the claims are construed to be based upon the doctrine of respondeat superior, those claims are barred under Monell v. Department of Social Services, 436 U.S. 658 (1978).

### B. STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Welder v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S.

3

317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C. LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be

4

punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). However, plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the Rules of this court.

### D. CONDITIONS OF CONFINEMENT

Confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Bell, 441

U.S. at 535 n.16. To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)). Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916 (1995). The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process-- even though the conditions imposed serve some ordinarily legitimate state objective." Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S. 949 (1993)). Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381.

Plaintiff alleges that he was forced to urinate on himself because defendants would not allow him to go to the restroom for the second time during booking. Defendants argue the motion for

6

summary judgment should be granted in that the claims fail to constitute or support a constitutional violation of cruel and unusual punishment.

Defendants submitted the affidavit of Trooper Carla Hartline who attests that she is employed with the South Carolina Highway Patrol (SCHP) as a Senior State Trooper and has been employed with the SCHP for four and one-half years. (Hartline affidavit, doc. #31-3). On the night/morning of April 6, 2009, Hartline was on patrol in her vehicle in Summerville, South Carolina area when she observed plaintiff's vehicle weaving across the center lane in front of her and she performed a traffic stop. (Id.). Plaintiff was taken to the restroom as soon as they arrived at the detention center. (Id.). A few minutes later, after the 20 minute observation period had begun in the Datamaster room, he again advised that he needed to use the restroom. (Id.). At that time, plaintiff claimed that he had taken a "fluid pill" just prior to the traffic stop. (Id.). However, the label on the prescription bottle that Hartline recovered from plaintiff's person stated he was to take one pill each morning. (Id.). Hartline attests that because she is not a medical doctor or familiar with fluid pills, she had no idea that they would make you have to go to the restroom. (Id.). Plaintiff was not complaining of any medical conditions, nor was he requesting medical treatment. (Id.). Hartline attests that due to plaintiff's argumentative and belligerent state, she believed that plaintiff was attempting to stall and thwart the required observation process by claiming to have to use the restroom again. (Id.). This is a well-known tactic amongst law enforcement where DUI suspects attempt to disrupt and prolong the process in an attempt to reduce their chance of blowing above the legal limit. (Id.). Hartline advised plaintiff that is he was to take the test, he would have to remain in the room where she could observe him. (Id.). Hartline further advised plaintiff that he could refuse to take the test and that if he chose not to take the breathalyzer test, he would be free to use the

restroom again. (Id.). Hartline asserts that she did nothing to violate plaintiff's constitutional right, nor did she act with gross negligence in carrying on her duties. (Id.).[3]

In their memorandum, defendants argue plaintiff fails to show any express intent on the part of Trooper Hartline to punish him and that it was plaintiff's behavior that was the sole complicating factor in the case. Defendants assert that South Carolina law requires that a breath sample must be taken within two hours of the initial arrest 56-5-2950(A) and the test requires the subject to be monitored for a period of twenty consecutive minutes before the suspect can give a breath sample. Defendants contend that plaintiff's voluntary decision to urinate on himself and the floor of the DataMaster room did not cause him anything more than embarrassment, a de minimus injury. Because plaintiff fails to show that he sustained any serious physical injury attributable to his conditions of confinement, defendants assert plaintiff's claim for mental or emotional injuries must be dismissed.

Plaintiff fails to show that this defendant had an express intent to punish him. Additionally, plaintiff has not presented evidence to create a genuine issue of material fact that the named defendant engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm would result." See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Plaintiff has not shown deliberate indifference on the part of the defendants. Strickler, supra. Based on the reasons discussed above, the undersigned recommends that summary judgment for the defendants be granted.

---

[3] Hartline attached a copy of the detailed report of the traffic stop, the arrest and the events in the Datamaster room. Defendants attached copies of the Uniform Traffic Ticket, prescription bottle, breath alcohol Analysis Test Report, Highway Patrol Investigation summary, and S.C. code Ann. 56-5-2953 to their memorandum.

# E. ELEVENTH AMENDMENT IMMUNITY

The defendants contend that the plaintiff's §1983 claims against defendant Hartline for money damages in her official capacity is barred pursuant to their Eleventh Amendment Immunity. Defendants also argue that the action against defendant Hartline should be dismissed as a matter of law to the extent that she is sued in her official capacity because while acting in her official capacity as an employees of the SCHP she is not a "person" under 42 U.S.C. §1983 and, therefore, is not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or

governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that defendant Hartline was/is an employee of the SCHP. Thus, she is entitled to Eleventh Amendment immunity from monetary damages in her official capacity.

## F. QUALIFIED IMMUNITY

Defendants argue that defendant Hartline is entitled to qualified immunity. Although the burden of showing immunity remains on the defendant, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue

of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the plaintiff fails to show that defendant Hartline violated any of his clearly established constitutional or statutory rights. Therefore, defendant Hartline is entitled to qualified immunity in her individual capacity. Thus, the undersigned recommends that the

defendants' motion for summary judgment be granted on this issue.

### G. DORCHESTER COUNTY SHERIFF'S DEPARTMENT

Defendants filed a motion to dismiss or for summary judgment asserting that the Dorchester County Sheriff's Department is a governmental entity and not a "person" amenable to suit in §1983 actions. In South Carolina, a sheriff's department is an agency of the state, not a department under the control of the county. Gulledge v. Smart, 691 F.Supp. 947, 954-55 (D.S.C.1988) (discussing sheriff as agent and alter ego of state and that deputy sheriffs act as the sheriff's agent), aff'd, 878 F.2d 379 (4th Cir.1989); Carroll v. Greenville County Sheriff's Dep't, 871 F.Supp. 844, 846 (D.S.C.1994) (suit against the sheriff's office is suit against the state). Sheriff's Departments in South Carolina are state agencies, not municipal departments. See Section 23-13-550, South Carolina Code of Laws; and 1975 S.C.Att'y.Gen'l.OP. No. 47 (January 22, 1975); and Section 23-13-10 of the South Carolina Code of Laws, which provides that only the Sheriff has the authority to hire or terminate employees of the Sheriff's Department, and that the Sheriff is responsible for neglect of duty or misconduct by a deputy sheriff. *See also* Allen v. Fidelity and Deposit Company, 515 F.Supp. 1185, 1189-1191 (D.S.C.1981) (County cannot be held liable for actions of deputy sheriff because deputy sheriffs serve at pleasure of the Sheriff, not the County), *affirmed*, 694 F.2d 716 (4th Cir.1982) [Table]; and Comer v. Brown, 88 F.3d 1315, 1332 (4th Cir.1996) (suit against Sheriff of Greenville County: " ... Sheriff Brown is an arm of the State."). Indeed, any damages to the plaintiff, if awarded in this case, would be paid by the South Carolina State Insurance Reserve Fund. Comer v. Brown, 88 F.3d at 1332 ("Judgments against the Greenville County Sheriff are paid by the South Carolina State Insurance Reserve Fund."). As an agency of the state, the Dorchester County Sheriff's

Department is immune from suit under the Eleventh Amendment to the United States Constitution which divests this court of jurisdiction to entertain a suit brought against the State of South Carolina or its integral parts. Stewart v. Beaufort County, 481 F.Supp.2d 483, 492 (D.S.C.2007) ("[A] federal court lacks jurisdiction to hear a cause of action against a South Carolina Sheriff's Department, as such a suit is barred by state immunity."). Accordingly, it is recommended that the motion for summary judgment (doc. #14) filed by defendant Dorchester County Sheriff's Department be granted.

### H. SOUTH CAROLINA HIGHWAY PATROL

Defendants filed a motion to dismiss or for summary judgment as to the South Carolina Highway Patrol asserting it is a governmental entity not a "person" amenable to suit in §1983 actions.

The Defendant SCHP is immune from plaintiff's claims in this case because the Eleventh Amendment to the United States Constitution divests this Court of jurisdiction to entertain a suit for damages brought against the State of South Carolina or its integral parts. SCHP, as a South Carolina state agency, is an integral part of the state and, thus, entitled to Eleventh Amendment immunity in this case. As a result, defendants' motion for summary judgment should be granted with respect to defendant SCHP. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

See Alden v. Maine, 527 U.S. 706 (1999); College Savs. Bank v. Florida Prepaid Educ. Expense Bd., 527 U.S. 666 (1999); College Savs. Bank v. Florida Prepaid Educ. Expense Bd., 527 U.S. 627

(1999); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 61-71 (1989); *Bellamy v. Borders*, 727 F. Supp. 247, 248-50 (D.S.C. 1989); *Coffin v. South Carolina Dep't of Social Servs.*, 562 F. Supp. 579, 583-585 (D.S.C. 1983); *Belcher v. South Carolina Bd. of Corrections*, 460 F. Supp. 805, 808-09 (D.S.C. 1978); *see also Harter v. Vernon*, 101 F.3d 334, 338-39 (4th Cir. 1996); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984)(although express language of Eleventh Amendment only forbids suits by citizens of other States against a State, Eleventh Amendment bars suits against a State filed by its own citizens). Accordingly, it is recommended that defendants' motion to dismiss/summary judgment (Doc. #14) be granted

## I. PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## III. CONCLUSION

The plaintiff has failed to show that defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motions filed by defendants (documents #14 and #31) for

summary judgment be GRANTED IN ITS ENTIRETY and the case dismissed.

IT IS FURTHER RECOMMENDED that plaintiff's motion for summary judgment (doc. #35) be denied.

                Respectfully Submitted,

                s/Thomas E. Rogers, III
                Thomas E. Rogers, III
                United States Magistrate Judge

October 1, 2010
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**